FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT 42 U.S.C. § 1983

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 11 2011
J.T. NOBLIN, CLERK
BY _____ DEPUTY

## COMPLAINT

GREENWOOD    63128
(Last Name)    (Identification Number)

GREGORY    THOMAS
(First Name)    (Middle Name)

South MISSISSIPPI CORRECTIONAL
(Institution)

INSTITUTE - P.O. BOX 1419
(Address) LEAKESVILLE, MS 39451
(Enter above the full name of the plaintiff, prisoner, and address plaintiff in this action)

ON THE BEHALF OF MYSELF AND ALL INMATES SIMILIARLY SITUATED IN SECURITY THREAT GROUP MANAGEMENT UNIT-8

\* THE DEFENDANTS ARE SUED IN THEIR \*
\* INDIVIDUAL AND OFFICIAL CAPACITIES \*

CIVIL ACTION NUMBER: 2:11cv4-KS-MTP
(to be completed by the Court)

V.

CHRISTOPHER B. EPPS -

EMMITT L. SPARKMAN -

RONALD KING -

REGINA HANCOCK -

THERESA SEABROOK

JOHN ROBERTS

ALL STGMU-8 ADMINISTRATORS, SUPERVISORS, AND STAFF.

(Enter above the full name of the defendant or defendants in this action)

## OTHER LAWSUITS FILED BY PLAINTIFF

**NOTICE AND WARNING:**
The plaintiff must fully complete the following questions. Failure to do so may result in your case being dismissed.

A.  Have you ever filed any other lawsuits in a court of the United States?    Yes (✓)  No ( )

B.  If your answer to A is yes, complete the following information for each and every civil action and appeal filed by you. (If there is more than one action, complete the following information for the additional actions on the reverse side of this page or additional sheets of paper.)

  1. Parties to the action: Robert Grayson, James Walker, Sherm Mack, Unknown Thomas and Jeffrey Kilpatrick

  2. Court (if federal court, name the district; if state court, name the county): U.S. District Court for the Northern District of Mississippi

  3. Docket Number: 4:99-cv-212 NBB

  4. Name of judge to whom case was assigned: Neal Biggers; Jerry Davis

  5. Disposition (for example: was the case dismissed? If so, what grounds? Was it appealed? Is it still pending?): Judgement entered for the defendants

- CONTINUED ON BACK -

1

QUESTION "B" CONTINUED...

1) Parties to the action:

Ronald Ching

Joe Errington

Joshua Csaszar

Paul Sharp

David Petrie

2) Court:

U.S. District Court for the Southern District of Mississippi

3) Docket Number:

2:09-cv-94 ks-MTP

4) Name of Judges:

Keith Starrett ; Micheal T. Parker

5) Disposition:

PENDING

## PARTIES

(In item I below, place your name and prisoner number in the first blank and place your present address in the second blank. Do the same for additional plaintiff, if any).

I. Name of plaintiff: Gregory T. Greenwood    Prisoner Number: 63128

Address: P.O. Box 1419 - Leakesville, MS 39451

(In item II below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use the space below item II for the names, positions, and places of employment of any additional defendants.)

II. Defendant: Christopher B. Epps is employed as Commissioner of Corrections at Mississippi Department of Corrections - Address: 723 N. President St, Jackson, MS 39202
-CONTINUED BELOW-

The plaintiff is responsible for providing the court the name and address of each plaintiff(s) as well as the name(s) and address(es) of each defendant(s). Therefore, the plaintiff is required to complete the portion below:

PLAINTIFF:

NAME: ALL PRESENT AND FUTURE INMATES OF STGMU-8

ADDRESS: South Mississippi Correctional Institute - AREA I STGMU-8 - P.O. Box 1419, Leakesville, MS 39451

DEFENDANT(S):

NAME:                                                                                      ADDRESS:
Emmitt L. Sparkman - Deputy Commissioner of Institutions / Hwy 49 West; Parchman, MS 38738
Ronald King - Superintendent of SMCI / P.O. Box 1419; Leakesville, MS 39451
Regina Hancock - Warden of SMCI AREA I / P.O. Box 1419; Leakesville, MS 39451
Theresa Seabrook - Deputy Warden of SMCI AREA I / P.O. Box 1419; Leakesville, MS 39451
John Roberts - Unit Administrator / Captain of STGMU-8 / P.O. Box 1419; Leakesville, MS 39451
All Administrators, Supervisors and Staff of STGMU-8 / P.O. Box 1419; Leakesville, MS 39451

2

# GENERAL INFORMATION

A. At the time of the incident complained of in this complaint, were you incarcerated because you had been convicted of a crime?

   Yes (✓)   No ( )

B. Are you presently incarcerated for a parole or probation violation?

   Yes ( )   No (✓)

C. At the time of the incident complained of in this complaint, were you an inmate of the Mississippi Department of Corrections (MDOC)?

   Yes (✓)   No ( )

D. Are you currently an inmate of the Mississippi Department of Corrections (MDOC)?

   Yes (✓)   No ( )

E. Have you completed the Administrative Remedy Program regarding the claims presented in this complaint?

   Yes (✓)   No ( ), if so, state the results of the procedure: _____

F. If you are not an inmate of the Mississippi Department of Corrections, answer the following questions:

   1. Did you present the facts relating to your complaint to the administrative or grievance procedure in your institution?

      Yes ( )   No ( )      N/A

   2. State how your claims were presented (written request, verbal request, request for forms): _____
      N/A

   3. State the date your claims were presented: N/A

   4. State the result of the procedure: N/A

3

## STATEMENT OF CLAIM

III. State here as briefly as possible the facts of your case. Describe how each defendant is involved. Also, include the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of different claims, number and set forth each claim in a separate paragraph. (Use as much space as you need, attach extra sheet if necessary.)

The plaintiff brings this suit on the behalf of myself and all present and future inmates of South Mississippi Correctional Institute's Security Threat Group Management Unit 8 challenging the unconstitutional living conditions and lack of medical care within this Unit. Being that the conditions described inside this complaint affects an entire class, to wit the present and future inmates of STGMU-8 the plaintiff requests the court grant class certification in this civil action and appoint counsel to protect the interests of the entire class. The attached 14 pages give a brief description of some of the conditions forced to be endured by the inmates of STGMU-8.

## RELIEF

IV. State what relief you seek from the court. Make no legal arguments. Cite no cases or statutes.

That damages be award to the Plaintiff for each day confined under these unconditional conditions. That Declaratory Judgement be entered in this civil action against that Defendents. That permanent injuctive relief be entered correcting all constitutional violations by the defendents. That the Court grant Preliminary Injuctive relief to Immediately protect the Class from irreparable harm.

Signed this 12th day of October, 20 10

Gregory Greenwood 63128
P.O. Box 1419 Leakesville, Ms 39451
Signature of plaintiff, prisoner number and address of plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

10/13/10
(Date)

Gregory Greenwood 63128
Signature of plaintiff

4

The following describes the unconstitutional conditions of South Mississippi's Correctional Institute, Security Threat Group Management Unit 8 and summarizes the foundation of this Complaint. Singularly and/or cumulatively, the facts contained therein pose immediate dangers to the health and safety of offenders and staff in this Unit. I, along with all inmates similarly situated within this Unit, are in imminent danger of irreparable harm from these conditions, unless they are swiftly and effectively corrected.

1) Deprivation of basic building sanitation:

(a) Zones: STGMU-8 is a warehouse styled bldg. with two Zones (A & B). Each Zone has approximately 26 single man, solid steel door cells, housing close to full capacity, as of the date of this Complaint. To put the problem simply, these Zones are perpetually filthy. They are seldomly swept, mopped, or otherwise cleaned. Discarded items and garbage are regularly left littering the Zones for weeks, with cleanups ordered only upon the expectation of "visitors" or "company."

(b) Cells: Cleaning supplies to sanitize cells are irregularly distributed and the ever present peelings of paint litters most cells. The majority of cells are infested with black mold and mildew, exacerbating this problem is the fact that many of the cells leak when it rains!

The combination of this water and no cleaning equipment, forces inmates to use state issued clothing or linen for cell cleaning.

(c) Pipe chases: The closet like enclosures between cells, which contain the pipes of the toilet and sinks are never cleaned. An inspection thereof, will reveal the accumulation of years of dirt, grime, and filth. Stagnant water is prevent in most, providing prime breeding grounds for vermin and pest such as mice, roaches, ants...etc. — That easily enter cells through ventilation at the side of the toilets.

(d) Loft Area: Is the unpartitioned area above the cells. The area contains plumbing pipes, ventilation system, assorted wirings and heating system. Similar in neglect to the pipe chase this area also is never cleaned. An ideal place for the poisonous Brown Recluse spiders that plague this unit, as well as, other pest, germs, bacteria...etc.

The deprivation of basic sanitation of STGM U-8 leads to the accumulation of mold, germs, infectious bacteria...etc. which represents a serious health hazard. The absence of regular cleaning, sanitation and garbage disposal leaves the Zones with a perpetual deplorable odor that any civilized human being would find revolting. Clearly, this violates the Constitution's 8th Amendment.

2 of 14

2) Deprivation of basic necessities and Hygiene:

(a) Clean clothing and linen: There are no laundry services available to the inmates of STGMU-8. Recently arrangements for outgoing and incoming laundry has completely collapsed. The lack of laundry services relegates inmates to do their own washing either in the sink or ~~shower~~ toilet. The expectation of having clean clothing by this manner is unrealistic and only increases the odds of transmitting potentially fatal virus or parasitic bacteria.

(b) Mattresses & pillows: Each inmate is entitled to a pillow and mattress. The bldg. keeps mattresses & pillows in house according to the number of cells. Yet none of these mattresses or pillows are sanitized before re-issuing. Most mattresses and pillows completely lack the protectively covering, leaving only the cotton itself to sleep upon. Bed bugs, lice... etc. are present and the transmission of disease causing organisms is a serious concern when pillows and mattresses that are soiled, damaged, dirty, foul smelling, stained with water, urine, semen, mildew and food are continuously swapped amongst STGMU-8 regardless of the conditions of these pillows and mattresses they are not subject to exchanged.

(c) Toiletries: basic necessities such as tissue, soap, toothpaste, toothbrushes are infrequently distributed leaving indigent inmates to do without these essentials for extended periods of time.

(d) Food and Water: Inmates in STGNU-8 are served nutritionally inadequate food that is regularly contaminated with foreign objects such as rocks, insect parts, hair... etc. Most dishes are prepared in ways unfit for human consumption. This food is served on trays that are often unsanitary and waterlogged. The trays smell sour due to stagnant water inside them. STGNU-8 staff use the deprivation of meals as a form of punishment. Security staff is also used to pass out trays. They do this with the same gloves they've worn to do pat searches and cell inspection without changing them before handling food. Neither does any of the staff wear hair nets. Security staff also threatens the offenders of STGNU-8, whom they consider problematic, with poisoning their food. Water proceeding from the faucets of the sinks is unfit for drinking. This has to be due to old pipes and dust because the drinking water is noticeably discolored an orange/brownish hue. Obviously this water is unsafe for human consumption.

    Deprivation of life's most basic necessities is indisputably a violation of the 8th Amend. of the U.S. Constitution.

3) Inadequate Cell Accomodations:

(a) Cells within STGMU8 fail to meet minimal A.C.A. requirements for size and accomodations; storage space for personal property is practically non-existent, leaving inmates with the only option of storing most personal property on the floor. There are no mirrors inside the cells to aid in compliance with grooming standards.

(b) No intercom system to communicate with security staff in cases of emergencies; This is especially grievous considering all cell doors are solid steel "boxcar" like doors that allow little opportunity for observation and almost no chance to communicate emergencies in the event an inmate becomes suddenly physically and/or mentally ill.

(c) Defective Plumbing; stopping up the toilet of one cell leads to flooding of the adjudicant cell with the human waste and filth of the cell which is stopped up. This is especially problematic considering the number of seriously mentally ill offenders housed in STGMU-8 who do this frequently.

4) Extreme Isolation:

(a) Profound Idleness and practically uninterrupted cell confinement behind solid steel doors for extended periods of a minimum of 6 months constitutes serious threats to physical and mental health.

(b) Recreation and exercise periods. This out of cell time is limited to a single hour including a 15 minute shower. The remaining 23 hours inmates of SMCIU-8 are confined behind the solid metal doors. Recreation and exercise periods are often denied by the staff responsible for providing these activities for unjustifiable reasons that amount to laziness on the behalf of these officers. Exercise pens are only small fenced in enclosures lacking any actual exercise equipment. This is inadequate for meaningful physical activity during recreation call.

(c) Programs and Jobs: SMCIU-8 is completely devoid of any "out of cell" programs. This includes the lack of religious services, Educational opportunities and rehabilitative opportunities. No jobs are available to offenders of in SMCIU-8 of any kind.

(d) Unreasonable restrictions on reading materials: SMCI administrators have created a custom of restricting reading material simply because they may disagree with the philosophical, political,

social or sexuality of its content. Content that is disagreeable to their own personal opinions and beliefs are censored. Racial discrimination seems to play a major part in the predominantly white administrations choice of what material to censor. Books by Black authors are very often censored without justification. Urban novels and publications are censored yet white counterpart that compose similiar material are allowed without hesitation.

5) Unreasonable restrictions on social privileges:
(a) Incoming and outgoing mail censorship is conducted in a way designed to destroy relationships with family and friends. All mail is understandably read, yet mail is often confiscated and/or lost without notice or justification, especially when the contents elaborate on the treatment of offenders in this unit. When sending multiple letters the contents of the envelopes are often switched. This is a purposeful act of vindictiveness aimed at hindering social development. Restrictions on incoming mail are not reasonably related to legitimate penological interests nor is the restrictions on outgoing correspondence necessary or essential to protect important or substantial interests.

(b) Telephone privileges; are rare occurrences amounting to one chance a month to make a call for those in STG core member status. Those

who are classified STG Leaders do not receive any telephone privileges while in phase one of the program which is 6 months at a minimum and only once monthly in phase two and phase three.

(c) Visitation: STG Core members are allowed visitation once every 3 months. STG Leaders are allowed no visits in a 6 month period while in phase one and once every 3 months while in phase two and three.

6) Health Care:

(a) Excessive delays in medical treatment within STGMU-8 resulting from deliberate indifference of physicians, nurses, and security staff poses an imminent risk to the offenders housed there. Opportunities to see medical staff often takes place inside the cells or Unit Administrator's office, instead of the sterile environment of an infirmary. There is no way to communicate a serious illness to staff from behind the solid steel door. Inmates who have seizures, psychological episodes, asthma and other debilitating illnesses often suffer sever symptoms of their illnesses without staff ever being aware. There is no recognizable protocol in place to respond to medical emergencies. Getting a seriously ill inmate from a cell in STGMU 8 to the infirmary will literally takes hours. There is no emergency vehicle or means of covering the distance for inmates unable to move under their own power. Shift/watch Commanders, who

must be prevent before we can be removed from these cells, delay making their way to the Unit. Eventually these procedures will lead to fatalities or irreparable harm to the offenders of STGMU-8.

(B) Dental Care: There is no preventative care available to the inmates of STGMU-8 such as fillings, cleanings... etc. Basic dental assistance takes weeks, while we suffer during the wait. Offsite visits literally takes months while we are told we must suffer the wait, because arrangements take more time for inmates in High Risk status. Security can not justify a prolonged wait based on this status while we continue to suffer.

(C) Mental Health Care: Majority of offenders (including myself) housed in STGMU-8 are under chronic psychiatric care and mentally ill. Housing the severly mentally ill in a segregated Unit with the mentally healthy is unconstitionally for both groups and creates a physically and mentally dangerous environment for all including correctional staff. Mentally ill inmates flood the Zones and all cells by stopping up the toilets. Often these flood waters contain urine, feces and other filth. Once this occurrs no inmate can protect themselves from exposure to the human waste and sewage waters. STGMU-8 staff leaves this water within the cells for hours without providing means of getting it out. Mentally ill inmates shout and scream

continuously. These inmates beat on toilets and steel doors throughout the day and night creating excessive levels of noise pollution. Not only is security staff and administrators indifferent to the mental health of the inmates of STGMU-8, but also staff is inadequately trained to deal with a mentally ill inmate having a psychological episode. The results of a mentally ill inmate acting out is usually met with excessive and unnecessary force via either a brutal cell extraction where security staff enters the inmate's cell and beats the offender until she quiets down or sprays the offender with the chemical agent "Fox", prolonged bursts thereof, until the inmate quiets down. This is followed by filing rule violation reports on these patients increasing the duration of our stay in segregation. Mentally are placed in "management cells" that have no mattresses pillows or cell furnishings, stripped naked of all their clothing denied toothbrushes soap toothpaste or any personal property and forced to spend weeks in these unhealthy, unsanitary and degrading conditions deprived of life most basic necessities.

7) Excessive and Unnecessary Use of Force:
(a) The security staff assigned to Unit 8 regularly uses excessive and unnecessary force for the sole purpose of inflicting pain and suffering. The unjustifiable use of force is sanctioned by SMCI's highest authorities and methodically

covered up. Each offender housed in Unit 8 is in immediate and serious risk of harm from rampant and violent behavior of security staff authorized to use force freely. I have personally been the victim of unnecessary use of force at the hands of correctional staff here at S.M.C.I. One of these occassions are currently under litigation at Greenwood v. King et. al Civil Action No# 2:09 cv 94 Ks-MTP The use of open and closed hand strikes, kicks, and submission locks without justifiable cause creates a substantial risk of irreparable harm to the offenders of STGMU-8.

(b) Weapons use is widespread in STGMU-8 where security staff use batons to strike and choke offenders. Restraints, handcuffs, waist chains, leg irons...etc are all used in Cruel and Unusual ways for the wanton infliction of pain. Most commonly applied is chemical agents/mace that is daily used without restraint. The heavy use of chemical agents/mace overly exposes the entire zone to the effects thereof causing everyone to suffer. Inmates sprayed with this weapon are never allowed to decontaminate as specified by policy and forced to endure the effects thereof until it "wears off."

Deliberate Indifference and purposeful encouragement of these uses of force by supervisors and administrators, along with those who

Committ the actual acts and violate the constitutional rights of the offenders in STGMU-8 and creates a dangerous enviroment for inmates and personnell.

8) Deprivation of Due Process:

(a) Classification; most inmates in STGMU-8 are classified as High Risk STG leaders and Core members. As mentioned beforehand the majority of these offenders are mental health patients whose classification is a direct result of their mental illnesses. Classification Hearing officer's custom of relying on confidential informant info without independantly establishing the reliability thereof, increases the possibility of erroneous conclusions in offender classification. The lack of meaningful periodic review by an impartial hearing officer renders the entire classification evaluation of STGMU-8 offenders no more than a sham/hoax.

(b) Discipline System; The disciplinary system is regularly used as a retalitory tool against offenders who are outspoken about the ongoing constitutional violations taking place within STGMU-8. Disciplinary hearings lack fundamental fairness where the Disciplinary Hearing officer, without fail, bases her decision on the staff report or statement, regardless of the volume of evidence

12 07 14

to the contrary. Impartiality and non-bias treatment is non existent in a STGMU-8 disciplinary proceeding. Not only does a guilty finding recycle the offender causing us began the STG program anew! what little privileges that are available to offenders are taken as well. Clearly those violations are of a constitutional magnitude for punishment that is excessive and deprivation of Due Process Rights.

9) Other Risks and Hazards:

(a) There is no known fire evacuation plan in place for the evacuation of STGMU-8 offenders in the event of a major fire. The cell I am currently housed in, completely lacks an operable sprinkler system. Poor ventilation inside the cell place offenders at risk of injury from smoke inhalation when inmate (mostly the mentally ill) set fires on the Zones.

(b) Showers: Inmates in STGMU-8 are allowed 15 minute showers. The area presents a serious health hazard for the offender in this unit. The shower and drains are filthy and foul smelling from a lack of thorough cleaning. The structural design of the shower cages are inherently unsafe whereas the walls of these cages are constructed of sharp metal mesh. The showers are no more than makeshift cages constructed by inmates in the metal shops.

Raised concrete protrusions on the floor of the shower area makes it similar to an obstacle course. add the fact that offenders of unit 8 are forced to negotiate this area in Leg Irons and waist chains and this equals an especially dangerous and accident prone area.

(C) yellow beams: across the exit of all management cells is a metal beam approximately 5 inches high that blocks off the bottom of the door. when exiting the cell this beam serves as a dangerous obstacle for offenders exiting in Leg Irons.

(d) Lead paint: As of the date of this complaint some of the cells are being painted, not only am I forced to breath these obnoxious fumes daily, but this paint also contains lead a substance exceptionally dangerous to the long term health of the offenders housed therein STGMU-8.

S. Greenwood #63128
P.O Box 1419
Leakesville, Ms. 39451

U.S.D.C Clerk
Southern Division
P.O. Box 23552
Jackson, Ms. 39225

